JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-01450-KK-ACCVx** | Date: | August 31, 2026 |
| Title: | ***Paul Kelly et al. v. California Baptist University*** | | |

| | |
|---|---|
| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Defendant's Motion to Dismiss [Dkt. 27]**

## I. INTRODUCTION

On July 1, 2026, plaintiffs Paul Kelly, Cooper Shore, Jesse Vasquez, and Luke James (collectively, "Plaintiffs") filed the operative First Amended Complaint ("FAC") against defendant California Baptist University ("Defendant"), raising a single claim under Title IX of the Education Amendments of 1972 ("Title IX") challenging Defendant's decision to eliminate its men's wrestling team. ECF Docket No. ("Dkt.") 26, FAC. On July 15, 2026, Defendant filed the instant Motion to Dismiss ("Motion"). Dkt. 27, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## II. BACKGROUND

### A. RELEVANT FACTS

As alleged in the FAC, Defendant is a private Christian university located in Riverside, California. FAC ¶ 25. Plaintiffs were students at Defendant and members of Defendant's men's wrestling team during the 2025-2026 school year. Id. ¶¶ 16-24.

On January 2, 2026, Defendant announced it would be eliminating its men's wrestling, golf, and swim and dive teams at the end of the 2025-2026 season. Id. ¶ 28. In determining which teams to eliminate, Defendant considered several factors, including "community impact, Title IX, . . . and available resources and facilities." Id. ¶ 29.

Defendant's termination of these three teams resulted in "statistical alignment between the male-to-female ratio of its athletes compared to the male-to-female ratio of the student body." Id. ¶ 32. Specifically, before Defendant discontinued these teams, Defendant's athletes were 46.19 percent male and 53.81 percent female, and Defendant's total student enrollment was 37.85 percent male and 53.81 percent female. Id. ¶ 33. Defendant's elimination of its men's wrestling, golf, and swim and dive teams decreased the number of male athletes by 69 and the percentage of male athletes to 36.34. Id. ¶ 34.

Based on these allegations, Plaintiffs contend Defendant's decision "was made to reach statistical parity or proportionality between the ratio of male and female athletes and the general undergraduate enrollment[.]" Id. ¶ 62.

## B. PROCEDURAL HISTORY

On March 26, 2026, plaintiffs Paul Kelly, Cooper Shore, and Jesse Vasquez commenced this action by filing a Complaint against Defendant, asserting a violation of Title IX arising out of Defendant's decision to eliminate its men's wrestling team. Dkt. 1, Complaint ("Compl.") ¶¶ 52-64.

On April 30, 2026, Defendant filed a Motion to Dismiss the Complaint ("First Motion to Dismiss"), arguing the plaintiffs' Title IX claim failed as a matter of law. Dkt. 20, First Motion to Dismiss. On May 14, 2026, the plaintiffs filed an Opposition to the First Motion to Dismiss, contending Defendant's decision to discontinue its men's wrestling team to reduce the number of male athletes violated Title IX, notwithstanding agency guidance and binding circuit precedent holding an educational institution may comply with Title IX by taking remedial measures to improve proportionality between male and female athletes. Dkt. 21 at 6-11. On May 20, 2026, Defendant filed a Reply in support of the First Motion to Dismiss. Dkt. 22.

On June 17, 2026, the Court granted Defendant's First Motion to Dismiss, finding the plaintiffs failed to state a Title IX claim. Dkt. 25 at 3-8. Specifically, the Court found (1) under the relevant agency guidance and circuit precedent, Title IX does not bar remedial actions to improve proportionality, and (2) these authorities remained binding on the Court regardless of the Supreme Court's recent decision in Loper Bright Enters. v. Raimondo ("Loper Bright"), 603 U.S. 369 (2024). Id. The Court, however, allowed the plaintiffs leave to amend to correct the identified deficiencies. Id. at 8.

On July 1, 2026, Plaintiffs filed the operative FAC. FAC. The FAC is identical to the Complaint apart from adding plaintiff Luke James as a named plaintiff, FAC ¶¶ 23-24, 53-55, and a request for nominal damages, id. at 12.

On July 15, 2026, Defendant filed the instant Motion. Mot. Defendant argues the FAC again fails to state a Title IX claim and requests dismissal with prejudice. Id. at 7-8.

On July 30, 2026, Plaintiffs filed an Opposition to Defendant's Motion. Dkt. 28, Opposition ("Opp."). Plaintiffs largely repeat the arguments from the Opposition to Defendant's First Motion to Dismiss. Compare id., with Dkt. 21.

On August 6, 2026, Defendant filed a Reply in support of its Motion. Dkt. 29, Reply.

This matter, thus, stands submitted.[1]

## III.
## LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor, Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022). The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.
## DISCUSSION

### A. THE FAC FAILS TO STATE A TITLE IX CLAIM

#### 1. Applicable Law

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

[1] In its Motion, Defendant briefly contends the FAC's amendments raise "new deficiencies, namely, a lack of Article III standing and mootness," insofar as they indicate Plaintiffs "are no longer students" at Defendant. Mot. at 7, 10. However, Plaintiffs represent plaintiff Luke James "remains enrolled at [Defendant] for the upcoming fall semester." Opp. at 7. Because "only a single plaintiff with standing is needed to assert a claim," the Court finds Plaintiffs have sufficiently established standing to maintain this action. LA All. for Hum. Rts. v. Cnty. of Los Angeles, 14 F.4th 947, 959 (9th Cir. 2021).

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) ("Section 1681(a)"). Title IX further provides:

> Nothing contained in subsection (a) of this section shall be interpreted to require any educational institution to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of persons of that sex in any community, State, section, or other area: Provided, That this subsection shall not be construed to prevent the consideration in any hearing or proceeding under this chapter of statistical evidence tending to show that such an imbalance exists with respect to the participation in, or receipt of the benefits of, any such program or activity by the members of one sex.

Id. § 1681(b) ("Section 1681(b)").

In 1974, Congress "explicitly delegated to the [Office of Civil Rights of the Department of Health, Education, and Welfare ("OCR")] the task of prescribing standards for athletic programs under Title IX." Neal v. Bd. of Trs. of Cal. State Univs., 198 F.3d 763, 767-72 (9th Cir. 1999); see Javits Amendment, Pub. L. No. 93-380, § 844, 88 Stat. 484, 612 (1974) (directing the OCR to publish "reasonable provisions considering the nature of particular sports"). Pursuant to this delegation of authority, the OCR promulgated regulations requiring recipients of federal funding assistance to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). To determine whether a funding recipient provides equal athletic opportunities, Title IX's implementing regulations require the consideration of, among other factors, "[w]hether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." Id. § 106.41(c)(1).

In 1979, the OCR issued a policy interpretation construing, among other things, this "effective accommodation" requirement. Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71,413 (Dec. 11, 1979) ("1979 Policy Interpretation"). To assess compliance with the "effective accommodation" requirement, the 1979 Policy Interpretation sets forth a "three-part test" under which a funding recipient must satisfy one of the following conditions:

> (1) Whether . . . participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or
>
> (2) Where the members of one sex have been and are underrepresented among . . . athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or
>
> (3) Where the members of one sex are underrepresented among . . . athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 854 (9th Cir. 2014) (quoting Title IX and Intercollegiate Athletics, 44 Fed. Reg. at 71,418). The Ninth Circuit has expressly adopted the three-part test. Neal, 198 F.3d at 767-72; Mansourian v. Regents of Univ. of Cal., 602 F.3d 957, 965 n.9 (9th Cir. 2010) (noting the 1979 Policy Interpretation is "entitled to deference"); Ollier, 768 F.3d at 854 (noting the Ninth Circuit has "adopted [the] three-part test"); A. B. v. Haw. State Dep't of Educ., 30 F.4th 828, 833 (9th Cir. 2022) (noting the Ninth Circuit's precedent "applies [the] 'three-part test'" for determining compliance with the effective accommodation requirement).

**2. Analysis**

Here, the FAC fails to allege any new facts giving rise to a plausible Title IX claim. In fact, the FAC is nearly identical to the Complaint and merely adds plaintiff Luke James as a named plaintiff in this action and requests additional nominal damages. See FAC ¶¶ 23-24, 53-55; id. at 12. Therefore, for the same reasons set forth in the Court's June 17, 2026 Order, the Court finds Plaintiffs fail to state a violation of Title IX. See Dkt. 25 at 3-8.

Specifically, the FAC again asserts Defendant fails to "effectively accommodate" their interests and abilities by discontinuing the men's wrestling team. FAC ¶ 67 (alteration removed) (quoting 34 C.F.R. § 106.41(c)(1)). However, Plaintiffs do not allege any facts demonstrating Defendant does not satisfy the three-part test expressly adopted by the Ninth Circuit. To the contrary, Plaintiffs concede the elimination of the men's wrestling, golf, and swim and dive teams results in "almost exact proportionality in relation to total student enrollment," in compliance with the three-part test.[2] Id. ¶ 34; see also id. ¶ 10 (alleging Defendant's decision was based on the three-part test). Thus, Plaintiffs' allegations establish Defendant "effectively accommodate[s] the interests and abilities of members of both sexes." 34 C.F.R. § 106.41(c)(1).

Plaintiffs' arguments to the contrary are unpersuasive. Plaintiffs first contend Defendant's decision "to reduce [Defendant's] population of male athletes" constitutes a "straightforward" violation of Title IX's prohibition on discrimination "on the basis of sex." Opp. at 8-9 (citing 34 C.F.R. § 106.41(a)). However, this argument is squarely foreclosed by binding circuit precedent. Specifically, in Neal, the Ninth Circuit held "the plain meaning of the nondiscrimination principle set forth in [Section] 1681(a) does not bar remedial actions designed to achieve substantial proportionality between athletic rosters and student bodies."[3] 198 F.3d at 771; accord Mansourian,

[2] Plaintiffs do not contend Defendant fails to satisfy substantial proportionality. In 1996, the OCR issued a clarification of the three-part test explaining the first step of the substantial proportionality analysis "begins with a determination of the number of participation opportunities afforded to male and female athletes," "count[ing] only 'actual athletes,' not 'unfilled slots.'" Ollier, 768 F.3d at 855-56 (citation modified). The second step of the substantial proportionality analysis considers "whether the number of participation opportunities – i.e., athletes – is substantially proportionate to each sex's enrollment." Id. at 856. Importantly, "[e]xact proportionality is not required," and "substantial proportionality is determined on a case-by-case basis in light of 'the institution's specific circumstances and the size of its athletic program.'" Id. (citation modified) (quoting Biediger v. Quinnipiac Univ., 691 F.3d 85, 94 (2d Cir. 2012)). In general, substantial proportionality exists "if the number of additional participants required for exact proportionality 'would not be sufficient to sustain a viable team.'" Id. (citation modified) (quoting Biediger, 691 F.3d at 94).

[3] Notably, every other court of appeals to have addressed this issue has reached the same conclusion. See, e.g., Cohen v. Brown Univ., 101 F.3d 155, 171 (1st Cir. 1996) (holding Title IX does

602 F.3d at 973 ("Universities may achieve compliance by reducing men's athletic slots until participation rates become substantially proportionate to the undergraduate population."). Interpreting Section 1681(a) to "already bar[] [this] type of remedial action," the Ninth Circuit explained, would render Section 1681(b) "mere surplusage." Neal, 198 F.3d at 771. Indeed, Section 1681(b) expressly permits the "consideration . . . of statistical evidence tending to show that [] an imbalance exists" in an institution's athletics programs, 20 U.S.C. § 1681(b), thereby suggesting proportionality "is certainly relevant to a determination of whether a school is in compliance with Title IX," Chalenor, 291 F.3d at 1047; accord Equity in Athletics, Inc., 639 F.3d at 102 ("[T]he statute expressly allows for consideration of sex-based statistical imbalances in the course of enforcement proceedings."). Hence, while "Title IX does not require proportionality, the statute does not forbid it either." Chalenor, 291 F.3d at 1047. Thus, taken as true, Plaintiffs' allegation that Defendant "eliminated athletic opportunities for male students to . . . achieve a preferred ratio," FAC ¶ 11, fails to state a Title IX claim.

Plaintiffs attempt to bypass Neal by mounting a collateral attack on the 1979 Policy Interpretation. Opp. at 9-11. For the same reasons articulated in its June 17, 2026 Order, the Court rejects this argument. As noted, the Ninth Circuit has expressly adopted and applied the three-part test set forth in the 1979 Policy Interpretation to assess the "effective accommodation" requirement. See Neal, 198 F.3d at 767-72; Mansourian, 602 F.3d at 965 n.9; Ollier, 768 F.3d at 854; A. B., 30 F.4th at 833. In so doing, the Ninth Circuit rejected Plaintiffs' argument that the 1979 Policy Interpretation "stark[ly] conflict[s]" with the text of Title IX, Opp. at 11, reasoning the statute itself permits "an institution in which male athletes are overrepresented [to] bring itself into Title IX compliance by reducing sufficiently the number of roster spots available to men," Neal, 198 F.3d at 771. Consistent with this interpretation of Title IX, the 1979 Policy Interpretation "does not . . . mandate statistical balancing"; rather, it "merely creates a presumption that a school is in compliance with Title IX and the applicable regulation when it achieves such a statistical balance." Kelley, 35 F.3d at 271; accord Cohen, 101 F.3d at 170 ("No aspect of the Title IX regime at issue in this case – inclusive of the statute, the relevant regulation, and the pertinent agency documents – mandates gender-based preferences or quotas, or specific timetables for implementing numerical goals."); Equity in Athletics, Inc., 639 F.3d at 103 (discussing Kelley and Cohen). The Court may not simply disregard this binding circuit precedent and must therefore apply the three-part test in assessing the

---

not "prohibit[] gender-conscious remedial measures"); Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 102 (4th Cir. 2011) (explaining Title IX "does not forbid seeking [] proportionality"); Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 615-16 (6th Cir. 2002) (affirming dismissal of a claim challenging the defendant's attempt to "br[ing] its athletic programs into compliance with Title IX"); Kelley v. Bd. of Trs., 35 F.3d 265, 270 (7th Cir. 1994) (holding the defendant's decision to eliminate the men's swimming program did not violate Title IX "since even after eliminating the program, men's participation in athletics would continue to be more than substantially proportionate to their presence in the [defendant's] student body"); Boulahanis v. Bd. of Regents, 198 F.3d 633, 638 (7th Cir. 1999) ("[T]he elimination of men's athletic programs is not a violation of Title IX as long as men's participation in athletics continues to be 'substantially proportionate' to their enrollment." (citation omitted)); Chalenor v. Univ. of N.D., 291 F.3d 1042, 1047 (8th Cir. 2002) ("[A]lthough Title IX does not require proportionality, the statute does not forbid it either."); Roberts v. Colo. State Bd. of Agric., 998 F.2d 824, 830 (10th Cir. 1993) ("Financially strapped institutions may still comply with Title IX by cutting athletic programs such that men's and women's athletic participation rates become substantially proportionate to their representation in the undergraduate population.").

sufficiency of Plaintiffs' effective accommodation claim.[4] See Demartini v. Microsoft Corp., 662 F. Supp. 3d 1055, 1065 (N.D. Cal. 2023) ("Disregarding Ninth Circuit precedent is not this Court's prerogative."); see also Grant v. Concordia Univ. Irvine, No. SACV 25-01793-FWS-JDEx, 2025 WL 3648509, at *5 n.4 (C.D. Cal. Oct. 24, 2025) (noting arguments about the continuing viability of the three-part test "are arguments for the Ninth Circuit, not this [C]ourt").

Notwithstanding Neal, Plaintiffs nevertheless contend "judicial deference to the 1979 Policy Interpretation is no longer permissible" in light of the Supreme Court's decisions in Loper Bright and Kisor v. Wilkie, 588 U.S. 558 (2019). Opp. at 10. As an initial matter, Plaintiffs make no attempt to demonstrate Loper Bright and Kisor so "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003); see also Kivett v. Flagstar Bank, FSB, 154 F.4th 640, 645 (9th Cir. 2025) (noting this requirement is a "high standard," and "[i]t is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent or for the intervening higher authority to 'cast doubt' on the prior circuit precedent" (citation modified) (first quoting Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 979 (9th Cir. 2013); and then quoting Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir. 2012))).

Regardless, Plaintiffs cannot make this showing. As explained in Loper Bright, the Supreme Court's overruling of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. ("Chevron"), 467 U.S. 837 (1984), "do[es] not call into question prior cases that relied on the Chevron framework." 603 U.S. at 412. Instead, "[t]he holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite [the Court's] change in interpretive methodology." Id. (citing CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008)). Therefore, the Ninth Circuit's interpretation of Title IX in Neal is not invalid merely because the Ninth Circuit relied on Chevron and considered the 1979 Policy Interpretation in discerning the meaning of Title IX. See id. ("[T]o say a precedent relied on Chevron is, at best, 'just an argument that the precedent was wrongly decided.'" (quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 266 (2014))).

Moreover, Neal did not rely solely on Chevron deference in concluding Title IX does not bar remedial measures. Rather, the Ninth Circuit applied other tools of statutory interpretation to discern the meaning of Title IX's prohibition on sex-based discrimination. See Neal, 198 F.3d at 768-73 (analyzing, among other things, the text, plain meaning, legislative history, and purpose of Title IX). Because Loper Bright "did not overturn the tools of statutory interpretation" applied by the Ninth Circuit in Neal, Neal is still binding on this Court. Walker Specialty Constr., Inc. v. Bd. of Trs. of Constr. Indus. & Laborers Joint Pension Tr. for S. Nev., 163 F.4th 1218, 1225 (9th Cir. 2026).

The Court further notes two additional reasons counseling against disregarding Neal. First, Congress "explicitly delegated to the [OCR] the task of prescribing standards for athletic programs under Title IX," 198 F.3d at 770, including "reasonable provisions considering the nature of

[4] The Court further notes every other court of appeals to have considered the 1979 Policy Interpretation has also adopted the three-part test. See Cohen v. Brown Univ., 991 F.2d 888, 899-902 (1st Cir. 1993); McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 291-93 (2d Cir. 2004); Williams v. Sch. Dist. of Bethlehem, 998 F.2d 168, 171 (3d Cir. 1993); Equity in Athletics, Inc., 639 F.3d at 101-04; Pederson v. La. State Univ., 213 F.3d 858, 879 (5th Cir. 2000); Horner v. Ky. High Sch. Athletic Ass'n, 43 F.3d 265, 273 (6th Cir. 1994); Kelley, 35 F.3d at 269-72; Chalenor, 291 F.3d at 1047; Roberts, 998 F.2d at 828-29.

particular sports," § 844, 88 Stat. at 612. By directing the OCR to prescribe "reasonable" regulations, Congress granted the agency "flexibility" to "exercise a degree of discretion" in formulating such rules. Loper Bright, 603 U.S. at 394-95 (citation modified) (quoting Michigan v. EPA, 576 U.S. 743, 752 (2015)). Second, even without Chevron deference, courts "may look to agency interpretations for guidance" under Skidmore v. Swift & Co., 323 U.S. 134 (1944), depending on the interpretations' "thoroughness [] in [their] consideration, the validity of [their] reasoning, [their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade." Lopez v. Garland, 116 F.4th 1032, 1036, 1039 (9th Cir. 2024) (quoting Skidmore, 323 U.S. at 140). Plaintiffs notably do not address the applicability of Skidmore deference to the 1979 Policy Interpretation. In light of the foregoing, the Court finds no basis to conclude Neal is no longer good law.

Finally, Plaintiffs attempt to limit the Ninth Circuit's holding in Neal to scenarios involving "significant budget constraints" and "substantial disparities between male and female athletic participation and their respective enrollment ratios." Opp. at 12. This argument also fails. Nothing in Neal or Title IX's text indicates the statute bars remedial measures specifically when an educational institution does not face budget constraints or "substantial" sex-based disparities. Rather, as discussed above, Title IX's plain meaning permits the use of remedial measures, regardless of whether these conditions are present. See Neal, 198 F.3d at 773 ("Title IX does not bar universities from taking steps to ensure that women are approximately as well represented in sports programs as they are in student bodies."). To the extent Plaintiffs seek to "rearrange or rewrite the statute" to create such exceptions, that decision "falls within the legislative, not the judicial, prerogative."[5] Xi v. U.S. I.N.S., 298 F.3d 832, 839 (9th Cir. 2002).

In sum, the Court finds Plaintiffs fail to state a claim for a violation of Title IX. Accordingly, Defendant's Motion is **GRANTED**.

///

[5] Plaintiffs' attempt to distinguish Neal on its facts fails for additional reasons. To the extent Plaintiffs contend Defendant had access to private donations to sustain the men's wrestling team, FAC ¶ 4, Defendant "had no obligation to accept the donation[s], and, even if it had, disbursement of the funds still would have been subject to the strictures of Title IX," Chalenor, 291 F.3d at 1048. Therefore, even assuming Defendant eliminated its men's wrestling team to comply with Title IX, it could not "skirt the requirement of providing both sexes equal opportunity in athletic programs by providing one sex more than substantially proportionate opportunity through the guise of 'outside funding.'" Id. (citation modified) (quoting Chalenor v. Univ. of N.D., 142 F. Supp. 2d 1154, 1158 (D.N.D. 2000), aff'd, 291 F.3d 1042). To the extent Plaintiffs maintain this case does not present a "significant disparity," Opp. at 13, that argument similarly fails. As Plaintiffs concede, female athletes were underrepresented by 8.34 percent before Defendant eliminated its men's wrestling, golf, and swim and dive teams. Id. at 12 & n.7. Importantly, however, "there is no 'magic number at which substantial proportionality is achieved'"; rather, "substantial proportionality is determined on a case-by-case basis in light of 'the institution's specific circumstances and the size of its athletic program.'" Ollier, 768 F.3d at 856 (citation modified) (first quoting Equity in Athletics, Inc., 639 F.3d at 110; and then quoting Biediger, 691 F.3d at 94). Plaintiffs notably make no attempt to analyze whether Defendant's athletics programs were substantially proportional to student enrollment before Defendant discontinued its men's wrestling team. In any event, the disparity alleged by Plaintiffs falls well within the range of disparities the Ninth Circuit has held amounts to a lack of substantial proportionality. See id. at 857 (holding a 6.7 percent disparity established lack of substantial proportionality).

**B. LEAVE TO AMEND**

**1. Applicable Law**

A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009). The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

**2. Analysis**

Here, Plaintiffs have failed to cure the deficiencies previously identified by the Court, despite having been granted an opportunity to amend. See Dkt. 25 at 8; see also Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint."). In fact, Plaintiffs appear to make no attempt to cure the deficiencies, but instead choose to stand on their prior factual allegations – which the Court has already found insufficient to state a claim. See generally FAC. Additionally, Plaintiffs do not "articulate[] any factual allegation or legal theory [they] would advance in a [third] complaint that would cure the deficiencies . . . articulated here – nor ha[ve] [they] explained why any such allegations or theories would have been previously unavailable." Election Integrity Project Cal., Inc. v. Weber, 113 F.4th 1072, 1099-100 (9th Cir. 2024).

Accordingly, the FAC is **DISMISSED WITHOUT LEAVE TO AMEND**.

**V.**
**CONCLUSION**

For the reasons set forth above, Defendant's Motion is **GRANTED**, and the FAC is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**. (JS-6)